UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

J. LAFLEUR, AMBER GREY, LINDSEY
RELUE, JOSHUA HARKNESS, STACEY
LEE FIELD, NICK CAPS, and ALYSSA
COATES on behalf of themselves and
other individuals similarly situated,

    Plaintiffs,

v.                                  CASE NO. 8:20-CV-01665-CEH-TGW

STATE UNIVERSITY SYSTEM OF
FLORIDA; TIMOTHY M CERIO,
RICHARD CORCORAN, AUBREY EDGE,
PATRICIA FROST, H. WAYNE
HUIZENGA, JR., DARLENE LUCCIO
JORDAN, SYDNEY KITSON,
CHARLES H. LYDECKER, BRIAN LAMB,
ALAN LEVINE, ALLY SCHNEIDER,
STEVEN M. SCOTT, ERIC SILAGY,
WILLIAM SELF, KENT STERMON,
and NORMAN D. TRIPP, and other
affiliated entities and individuals,

    Defendants.
_____/

# DEFENDANTS' MOTION TO DISMISS AND TO STRIKE

Defendants State University System of Florida ("State University System"), and Timothy M. Cerro, Richard Corcoran, Aubrey Edge, Patricia Frost, H. Wayne Huizenga, Jr., Darlene Luccio Jordan, Sydney Kitson, Charles H. Lydecker, Brian Lamb, Alan Levine, Ally Schneider, Steven M. Scott, Eric Silagy, William Self, Kent Stermon, and Norman D. Tripp (collectively, "the Board of Governors"), by and through their undersigned counsel and pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, hereby move to dismiss plaintiffs' First Amended Class Action Complaint. Defendants further move to strike plaintiffs' prayer for punitive and treble damages. The grounds upon which the instant motion is based are set forth in the following Supporting Memorandum of Law.

## SUPPORTING MEMORANDUM OF LAW

### I.

### PRELIMINARY STATEMENT

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "provide the grounds of his entitlement to relief," and factual allegations must be sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007) (citations and internal punctuation omitted). Moreover, legal conclusions must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 570). Mere conclusory statements "are not entitled to the assumption of truth." *See Iqbal,* 556 U.S. at 679. Nor do courts need to accept as true a "legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (citations omitted). The conclusory nature of such allegations "disentitles them to the presumption of truth." *Iqbal,* 556 U.S. at 681. Where plaintiffs have "not nudged [their] claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

## II.

## ARGUMENT

A.  **The "State University System of Florida" Is Not A Legal Entity With The Capacity To Be Sued**

The First Amended Complaint attempts to assert claims against the "State University System of Florida." However, the "State University System of Florida" is not a proper party because it is not a body corporate under Florida law and it lacks the legal capacity to be sued.

The capacity of an entity to be sued is governed by the law of the state where the district court is located. Fed.R.Civ.P. 17(b); *U.S. v. Olavarrieta,* 812 F.2d 640 (11th Cir. 1987). Under Florida law, only legal entities, personal or corporate, have the capacity to be sued. *Florida Medical Assoc., Inc. v. Spires,* 153 So.2d 756 (Fla. 1st DCA 1963); *Florida City Police Dep't v. Corcoran,* 661 So.2d 419 (Fla 3d DCA 1995) (city police department was not a proper defendant because it did not have the capacity to sue and be sued). Moreover, the Florida Constitution empowers the Florida Legislature to authorize suits against the state or any of its agencies. *See Id. Florida Livestock Bd. v. Gladden,* 86 So.2d 812, 813 (Fla. 1956).

The Florida Governing Boards for Universities Amendment, also known as Amendment 11, was initiated as a proposed amendment to the Florida Constitution on the November 5, 2002 election ballot in Florida, where it was approved. The text of the amendment read as follows:

State University System.-

(a) Purposes.  In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida's citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.

(b) State University System.  There shall be a single state university system comprised of all public universities.  A board of trustees shall administer each public university and a board of governors shall govern the state university system.

(c) Local Boards of Trustees.  Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system.  The board of governors shall establish the powers and duties of the board of trustees.  Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors.  The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law.  The chair of the faculty senate, or the equivalent, and the present of the student body of the university shall also be members.

(d) Statewide Board of Governors.  The board of governors shall be a body corporate consisting of seventeen members.  The board shall operate, regulate, control, and be fully responsible for the management of the whole university system.  These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs.  The board's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law.  The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system.  The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law.  The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, shall also be members of the board.

Accordingly, in 2003 when the amendment became effective, the Board of Governors became the responsible constitutional body for establishing system-wide policies and the boards of trustees for each state university became the responsible constitutional bodies for administering their respective institutions.[1] Pursuant to Section 1001.72(1), *Florida* Statutes, each state university's board of trustees "shall be a public body corporate … with all of the powers of a body corporate, including the powers to … sue and be sued, to plead and be impleaded in all courts of law or equity…." Similarly, the Board of Governors is a body corporate under Florida law. *See* Article IX, Section 7(d), *Florida Constitution;* Section 1001.70, *Florida Statutes.*

When *Olavarrieta, supra,* was decided by the Eleventh Circuit, the Florida state university system was governed by the Board of Regents and that entity was the only body corporate that could be sued on claims involving Florida state universities. In affirming the district court's dismissal of a third party complaint against the University of Florida in *Olavarrieta*, the Eleventh Circuit stated: "Under Florida law, the University of Florida is not endowed with an independent corporate existence or the capacity to be sued in its own name. Rather, those characteristics are bestowed on the Board of Regents as the head of Florida's university system…. Therefore, the University of Florida is not a proper party in this action, and the district court was correct in dismissing the third party complaint asserted against it." 812 F.2d 6 at 643. *See also Lundquist v. University of South Dakota Sanford School of Medicine,* 705 F.3d 378,

---

[1] By filing this motion, undersigned counsel does not make an appearance on behalf of any state university board of trustees that has not expressly been named in this action or served with process, and that has not consented to personal jurisdiction without proper and effective service of process.

380 (8th Cir. 2013) (the University of South Dakota Sanford School of Medicine lacked the capacity to be sued where the South Dakota legislature had granted the Board of Regents, but not the University, the power to sue and be sued). *Cf. McCready v. Villas Apartments,* 379 So.2d 719 (Fla. 5th DCA 1980) (Dauksch, C.J., concurring) (the owner of a fictitious name is the proper party to be sued, not the fictitious name).

Here as well, no Florida constitutional or statutory provision endows the "State University System of Florida" with an independent corporate existence or the capacity to be used. Like the University of Florida in *Olavarrieta,* the "State University System of Florida" is simply an unincorporated operating name, not a public body corporate. By filing suit against the "State University System of Florida," plaintiffs have attempted to sue an entity that lacks the capacity to be sued under Florida law. Accordingly, all claims against it should be dismissed.[2]

**B.    Sovereign Immunity Bars Plaintiffs' State Law Claims**

  **1.  Sovereign immunity bars plaintiffs' breach of contract claim.**

Under Florida law, governmental entities are immune from suit unless their sovereign immunity is expressly waived by act of the Florida Legislature. *See* Article X, Section 13, *Florida Constitution*. "In Florida, sovereign immunity is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.,* 471 So.2d 4, 5 (Fla.

---

[2] The First Amended Complaint also fails to adequately allege venue-specific facts to proceed in this Court. Paragraph No. 35 of the First Amended Complaint alleges in conclusory fashion that venue is proper because "Defendants operate their headquarters within this district." However, because the "State University System of Florida" is not a body corporate, an allegation regarding where it operates its headquarters is wholly meaningless. Moreover, the conclusory venue allegations appearing in Paragraph No. 35 are contradicted by Paragraph Nos. 37 and 38 of the First Amended Complaint, which allege that the defendants' principal place of business and headquarters are located in Tallahassee.

1984) (*citing* Section 13, Art. X, Fla. Const.). It "protects the state from burdensome interference from the performance of its governmental functions and preserves its control over state funds, property and instrumentalities." *Brevard County v. Morehead,* 181 So.3d 1229, 1232 (Fla. 5th DCA 2015) (*quoting Davis v. State, Dep't of Corr.,* 460 So.2d 452, 461 (Fla. 1st DCA 1984)).

The Board of Governors[3] is part of the executive branch of Florida state government. Article IX, Section 7, *Florida Constitution*; Section 1001.705(1)(a), *Florida Statutes.* In addition, to the extent that such an entity could be said to exist, the "State University System of Florida" is necessarily a part of the executive branch of state government. *See* Section 1001.705(1)(d), *Florida Statutes.*

The Florida Supreme Court has made it clear that the waiver of sovereign immunity for breach of contract claims applies only to express, written contracts. *See Pan-Am Tobacco Corp. v. Department of Corrections,* 471 So.2d 4 (Fla. 1984). "When an alleged contract is merely implied, ... sovereign immunity protections remain in force." *Brevard County v. Morehead, supra* at 1232 (*quoting City of Fort Lauderdale v. Israel,* 178 So.3d 444, 447 (Fla. 4th DCA 2015)); *DeBose v. Univ. of S. Fla.,* 178 F. Supp. 3d 1258, 1269 (M.D. Fla. 2016) (sovereign immunity barred implied contract claims); *Monroe v. Sarasota County School Bd.,* 746 So.2d 530 (Fla. 2d DCA 1999) (sovereign immunity is not waived

---

[3] The First Amended Complaint names each individual member of the Board of Governors in his or her official capacity. This is simply another way of pleading claims against the Board of Governors. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("[a] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office"); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1981).

for actions based on implied contract).

Sovereign immunity is a defense directed to the subject matter jurisdiction of the Court. *See Wallace v. Dean,* 3 So.3d 1035, 1045 n.14 (Fla. 2009); *Brevard County v. Morehead,* 181 So.3d at 1233. Therefore, the facts upon which a waiver of sovereign immunity depends must be pleaded in the complaint. *See Levine v. Dade County School Board,* 442 So.2d 210, 213 (Fla. 1983); *Arnold v. Schumpert,* 217 So.2d 116, 122 (Fla. 1968); *Charity v. Board of Regents,* 698 So.2d 907 (Fla. 1st DCA 1997).

Here, plaintiffs' breach of contract claim alleges: "By accepting payment, Defendants entered into contractual arrangements with Plaintiffs and Class Members to provide educational services, experiences, opportunities, and related services for the Spring Semester 2020 and Summer Semester 2020." [First Amended Complaint, ¶ 54]. Such allegations fall far short of the "express, written, contract" required to overcome USF's sovereign immunity.

These allegations suggest, at most, an implied contract. *See Williams v. Fla. State Univ.,* 2014 WL 340562, at *5-*6 (N.D. Fla. Jan. 29, 2014) (student's breach of contract claim against university barred by sovereign immunity because "[w]hile a student's relationship with the university is contractual in nature, it is an implied and not an express, written contract"), *aff'd sub nom Williams v. Becker,* 608 Fed. Appx. 905 (11th Cir. 2015); *Pinkston,* 2019 WL 1383467, at *4 (*citing Williams* and concluding Pinkston could only allege an implied contract; thus, the claim was barred by sovereign immunity); *Charity v. Bd. of Regents of Div. of University of*

*Fla. Dep't of Educ.,* 698 So.2d 907 (Fla. 1st DCA 1997) (*en banc*) (applying sovereign immunity to bar breach of contract claim by student who was prevented from pursuing doctoral degree).

In short, Count I of the First Amended Complaint fails to plead facts demonstrating that this Court has subject matter jurisdiction over plaintiffs' breach of contract claim because plaintiffs have not pointed to an express, written contract upon which that claim is based. Therefore, plaintiffs' breach of contract claim is barred by the application of sovereign immunity and that claim should be dismissed.

**2. Plaintiffs' unjust enrichment claim is barred by sovereign immunity.**

"A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a 'contract' as a matter of law." *Calderone v. Scott,* 2015 WL 1800315, at *2 (M.D. Fla. April 16, 2015) (*quoting Too/trend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th Cir. 1999)). As explained by the Florida Supreme Court in *Pan-Am Tobacco,* the waiver of sovereign immunity is limited to express, written contracts. Therefore, claims based upon an implied contract are barred. *See County of Brevard v. Miorelli Eng'g, Inc.,* 703 So.2d 1049, 1051 (Fla. 1997) (claims for work falling outside of express contract are barred by sovereign immunity); *Brevard County v. Morehead, supra* at 1232; *City of Fort Lauderdale v. Israel,* 178 So.3d at 446.

"Because unjust enrichment claims are not torts, Florida's legislature has not waived" its sovereign immunity as to such claims. *Calderone,* 2015 WL 1800315, at *2; *Llorca v. Rambosk,* 2015 WL 2095805, at *2 (M.D. Fla. May 5,

2015); *Brandt v. Public Health Trust of Miami-Dade County,* 2010 U.S. Dist. LEXIS 109935 (S.D. Fla. Oct. 15, 2010) (sovereign immunity barred unjust enrichment claim); *Cayenta Canada, Inc. v. Orange County,* 2002 WL 34373972, at *3 (M.D. Fla. Nov. 20, 2002) (unjust enrichment claim barred by sovereign immunity).

In short, with or without an express, written contract, defendants are entitled to sovereign immunity on plaintiffs' unjust enrichment claim as a matter of law, and it should be dismissed *with prejudice. Llorca,* 2015 WL 2095805, at *2; *Calderone,* 2015 WL 1800315, at *2; *Morehead,* 181 So.3d at 1232; *Brandt v. Public Health Trust of Miami-Dade,* 2010 U.S. Dist. LEXIS 109935 (S.D. Fla. Oct. 15, 2010).

### 3. **Plaintiffs' conversion claim is barred by sovereign immunity.**

Conversion is not simply "the possession of property by the wrongdoer, but rather such possession in conjunction *with a present intent* on the part of the wrongdoer to deprive the person entitled to possession of the property." *Brand v. Old Republic Nat'l Title Ins. Co.,* 797 So.2d 643, 646 (Fla. 3d DCA 2001) (emphasis added) (*citing Senfeld v. Bank of Nova Scotia Trust Co (Cayman) Ltd.,* 450 So.2d 1157, 1160-61 (Fla. 3d DCA 1984)). See also *Rosenthal Toyota, Inc. v. Thorpe,* 824 F.2d 897, 902 (11th Cir. 1987); *Marsh USA, Inc. v. Walpole, Inc.,* U.S. Dist. LEXIS 61544, at *2 (M.D. Fla. Apr. 6, 2005) ("formation of intent to deprive the owner of the property is an element of a conversion action").

Because "intent" is a necessary element of conversion, *Section 768.28(9)(a), Florida Statutes,* immunizes a state agency from any such claim. *See Sampson v. City of Miami Gardens,* 2014 WL 11894447, at *3 (S.D. Fla.

2014) (under Florida law, conversion, as an intentional tort, is barred by sovereign immunity under the plain language of Section 768.28(9)(a), *Florida Statutes*).

In *Sampson,* the court rejected older cases concluding that conversion claims were not barred by sovereign immunity, and held that intent is a necessary element of conversion. *Sampson,* 2014 WL 11894447, at *3. The *Sampson* court recognized a "jurisprudential evolution" where "Florida courts now view the essence of conversion [to include] 'a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property.'" *Id.* (*quoting Brand v. Old Republic Nat'l Title Ins. Co., supra* at 646). Having found intent to be a necessary element of conversion, the *Sampson* court correctly concluded that a state agency or subdivision could not be liable for a conversion claim based on a willful disregard of property. *Id.*

The same result should obtain here. Even if plaintiffs had pled facts supporting the elements of conversion (which, as discussed *infra*, they did not), this Court should dismiss the claim based on sovereign immunity. Because intent is a necessary element of conversion claim, Section 768.28(9)(a), *Florida Statutes* is triggered, which plainly immunizes state agencies and subdivisions from the tortious behavior committed "in a manner exhibiting … willful disregard … of property."

**C.     Plaintiffs' Constitutional Claims Should Be Dismissed**

In Counts II and III of the First Amended Complaint, plaintiffs attempt to assert a Takings claim and a procedural due process claim under 42 U.S.C. §

1983 and the Florida Constitution.  However, Section 1983 only permits actions against "persons."  A state or a state agency is not a "person" within the meaning of Section 1983.  *Will v. Michigan Dept. of State Police,* 491 U.S. at 71, 109 S.Ct. at 2312 ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1524 (11th Cir. 1995).  Moreover, Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to Section 1983. *Gamble v. Florida Dep't of Health & Rehab. Serv.,* 779 F.2d 1509, 1513 (11th Cir. 1986).

In addition, Section 768.28, *Florida Statutes,* to the extent that plaintiffs are attempting to assert claims under the Florida Constitution, which provides a limited waiver of sovereign immunity for tort actions under Florida law, excludes liability for constitutional torts.  *See Garcia v. Reyes,* 697 So.2d 549, 550 (Fla. 4th DCA 1997), *citing Hill v. Dep't of Corrections,* 513 So.2d 129, 133 (Fla. 1987); *Bell v. Florida,* 2017 WL 1399975, at *7 (M.D. Fla. Mar. 13, 2017) ("[t]o the extent Plaintiff is attempting to sue the State directly for money damages under the Florida Constitution, she cannot do so because the State has not waived sovereign immunity for such claims").

In short, Counts II and III should be dismissed because defendants are not a "person" within the meaning of Section 1983 and plaintiffs' state constitutional claims are barred by sovereign immunity.

D.  **Count I Fails To State A Claim**

To state a claim for breach of contract in Florida, plaintiffs must establish three elements: (1) the existence of a valid contract, (2) a material breach, and (3) damages resulting from the breach. *Gaines v. Robinson Aviation (RVA), Inc.,* 2014 WL 68829534, at *3 (M.D. Fla. Dec. 4, 2014).

Under Florida law, not every student-university interaction, even if in writing, creates a contract. *See Acosta v. District Board of Trustees,* 905 So.2d 226, 228 (Fla. 3d DCA 2005) (no contract was formed between students of a medical assistant program and a college, despite the fact that the students attended the program and graduated).

In *Herssein Law Group v. Reed Elsevier,* 594 Fed. Appx. 606 (11th Cir. 2015), the Eleventh Circuit stated:

> It is a basic tenet of contract law that a party can only advance a claim of breach of contract by identifying and presenting the actual terms of the contract allegedly breached. The Sixth Circuit, in a breach of contract case originating from Ohio, concluded that the failure to attach the actual contract coupled with a failure to cite specific language doomed the claim pursuant to the standards of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). *Northampton Restaurant Grp, Inc. v. First Merit Bank, NA.,* 492 Fed. Appx. 518, 521-22 (6th Cir. 2012). A plaintiff may not use discovery to locate the contracts in question after filing a suit.... Thus, HLG has failed to allege its claim for breach with STTS with sufficient specificity to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

594 Fed. Appx. at 608.

In addition, federal courts sitting in Florida have repeatedly ruled that it is appropriate to dismiss a breach of contract claim if it fails to state which specific

provision of the contract was breached. *See Cruz v. Underwriters at Lloyds of London,* 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014); *Whitney Nat. Bank v. SDC Cmtys., Inc.,* 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) (dismissing breach of contract claims because plaintiff failed to "allege the specific provision of the contract allegedly breached," and thus the claims were "examples of 'the-defendant-unlawfully-unharmed-me' accusation that *Iqbal* warned against"); *Brown v. Cap. One Bank (USA), N.A.,* 2015 WL 5584697, *3 (S.D. Fla. Sept. 22, 2015) ("[i]n order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached"); *George v. Wells Fargo Bank, N.A.,* 2014 WL 61487, at *4 (S.D. Fla. Jan. 8, 2014) (failure to identify which provision of the contract has been breached "runs afoul of *Twombly*" and "renders the pleading deficient under Florida contract law").

Here, plaintiffs fail to attach any "contract" to the First Amended Complaint. In addition, Count I fails to allege the actual terms of the alleged contract on which the claim is based or to allege any specific contract provisions that support their claim. Count I also fails to allege the party or parties with whom the contract was entered into, the date, or even whether the contract was in writing. Therefore, Count I fails to state a claim. *See Herssein Law Group v. Reed Elsevier, Inc., supra* at 608.

**E.** **Count IV Fails To State A Claim**

"[C]onversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time. *Furmanite Am.,*

14

*Inc. v. TD Williamson, Inc.,* 506 F.Supp. 2d 1134, 1143 (M.D. Fla. 2007). If there is a contract between the parties, the conversion "must go beyond, and be independent from, a failure to comply with the terms of the contract"). *Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla. 3d DCA 2008); *Cutler v. Voya Fin., Inc.,* 2018 WL 4410202, at *5 (S.D. Fla. Aug. 23, 2018) ("Plaintiff suggests that any benefit that a defendant returns in connection with an alleged breach of contract gives rise to a conversion claim. That cannot be the law because [t]he Eleventh Circuit and Florida courts have consistently held a conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract").

Here, plaintiffs' conversion allegations are not independent of an alleged failure by defendants to perform their alleged contractual duties. Instead, plaintiffs' conversion claim is based upon an alleged contract to provide in-person educational services, which is identical to their breach of contract claim. Therefore, Count IV should be dismissed for failure to state a claim. *See PNC Bank v. Colonial Bank,* 2008 WL 2917639, at *2 (M.D. Fla. July 24, 2008) (dismissing conversion claim where defendant's allegedly wrongful retention of funds owed to the plaintiff pursuant to a contract were directly related to the breach of contract in the plaintiff's breach of contract claim); *Ultimate Motors, Inc. v. Lionheart Motorcars, LLC,* 2019 WL 9786489 (S.D. Fla. July 23, 2019) (dismissing conversion claim because plaintiff failed to allege any tortious acts that were sufficiently independent of the defendant's alleged breach of contract).

Count IV also fails to state a claim because it fails to allege that the monies plaintiffs are suing for are identifiable or are being held in a segregated account for them. *See Gasparini v. Pordomingo,* 972 So.2d 1053 (Fla. 3d DCA 2011) (for money to be the object of conversion, "there must be an obligation to keep intact or deliver the specific money in question, is that money can be identified"); *Walker v. Figarola,* 59 So.3d 188 (Fla. 3d DCA 2011) (a simple debt that can be discharged by the payment of money cannot generally form the basis for a conversion or civil theft claim); see also *Tambourine Comercio International S.A. v. Solowsky,* 312 Fed. Appx. 263, 272 (11th Cir. 2009) ("[t]his identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim"); *Temurian v. Piccolo,* 2019 WL 1763022 (S.D. Fla. Apr. 19, 2019) (dismissing conversion claim because plaintiff's conclusory allegations did not state specific and identifiable funds necessary for a conversion claim.

**F.**     **<u>Count V Fails To State A Claim</u>**

A claim for the equitable remedy of unjust enrichment cannot be brought if there is an express contract covering the same subject matter as the unjust enrichment claim. *See Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp,* 2006 WL 4990903, at *5 (N.D. Fla. June 15, 2006); *Sterling Breeze Owners' Ass'n, Inc. v. New Sterling Resorts, LLC,* 255 So.3d 434, 437 (Fla. 1st DCA 2018) (*citing Diamond "S" Dev. Corp. v. Mercantile Bank,* 989 So.2d 696, 697 (Fla. 1st DCA 2008)); *Fulton v. Brancato,* 189 So.3d 967, 969 (Fla. 4th DCA 2016) ("[A] plaintiff cannot pursue ...

unjust enrichment to prove entitlement to relief if an express contract exists"); *Lewis v. Seneff,* 654 F. Supp. 2d 1349, 1369-70 (M.D. Fla. 2009) (dismissing an unjust enrichment claim with prejudice).

"[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal cause of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal." *Koski v. Carrier Corp.,* 347 F.Supp. 3d 1185, 1196 (S.D. Fla. 2017). *See also Weaver v. Mateer & Harbert, P.A.,* 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012) ("[A]lthough plaintiff may be entitled to plead in the alternative, that is not what plaintiff has done in this case. Plaintiff's unjust enrichment claim relies on the factual predicate common to all its claims").

Count V incorporates by reference the allegations appearing in Paragraph No. 3 of the First Amended Complaint. Therefore, even if plaintiffs' breach of contract claim is dismissed, Count V also is due to be dismissed because plaintiffs clearly rely upon a contract. *See Toca v. Tutco, LLC,* 430 F.Supp. 3d 1313, 1327 (S.D. Fla. 2020) ("[t]hat the plaintiffs alleged such an existence, not necessarily proved, was sufficient to bar them from *also* bringing a claim for unjust enrichment 'on the same factual allegations'"); *Koski,* 347 F.Supp. 3d at 1195.

**G.     Plaintiffs' Punitive And Treble Damages Prayers Should Be Stricken**

The First Amended Complaint seeks an award of punitive and treble damages. However, such damages are not legally cognizable under Florida law as part of plaintiffs' contract, implied contract and tort claims. *See Lewis v. Guthartz,* 428 So.2d

222 (Fla. 1983) (punitive damages are not available in a breach of contract action absent an accompanying independent tort); *CCCS International v. Fontainebleau Resorts, LLC,* 2009 WL 10667775, at *4 (S.D. Fla. 2009) (punitive damages are unavailable on implied contract claims); *Ericson v. Hunter,* 932 F. Supp. 1380, 1386 (M.D. Fla. 1996). Similarly, plaintiffs cannot recover punitive damages on their constitutional claims. *See Will v. Michigan Dep't of State Police, supra; Bradsheer v. Florida Dep't of Highway Safety and Motor Vehicles,* 20 So.3d 915, 920 (Fla. 1st DCA 2009).

H. **Plaintiffs' Class Claims Should be Dismissed**

Because plaintiffs have failed to state any viable claims in their individual capacities, the question of whether to certify this case as a class action has been rendered moot. Rather, "[w]hen a named plaintiff has no cognizable claim for relief, he cannot represent others who may have such a claim, and his bid to serve as a class representative must fail." *Henley v. Turner Broadcasting Sys., Inc.,* 267 F.Supp. 3d 1341, 1357 (N.D. Ga. 2017). *See also Osceola v. Florida Dep't of Revenue,* 893 F.2d 1231, 1232 (11th Cir. 1990) ("[t]he district granted the state's motion to dismiss and denied Osceola's motion for class certification because the issues was moot").

Moreover, given that this civil action was filed as a putative class action, but has not been certified, a stay of the Court's consideration of the class action allegations is warranted until after the substantive basis for dismissal is fully adjudicated. *See, Newberg on Class Actions,* § 7:10 (5th ed.) (due to the early nature of most motions to dismiss, courts will often handle them prior to deciding a motion for

class certification); *see also Webster v. Royal Caribbean Cruises, Ltd.,* 124 F. Supp. 2d 1317, 1321 (S.D. Fla. 2000) (merits of a motion to dismiss considered prior to an consideration of class certification as "[t]he vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification").

In short, ruling first on a motion to dismiss is a more efficient procedure as it will often under moot the necessity of the Court expending resources ruling on class certification. *See Newburgh on Class Actions,* § 7:9 (5th ed.). Accordingly, assuming *arguendo* that any of plaintiffs' claims survive dismissal, defendants reserve the right to challenge the appropriateness of this case as a class action at that time.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the First Amended Complaint.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard
Suite 1900
Tampa, FL  33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
Attorney for Defendants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 1, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Michael James Pascucci
Joshua Harris Eggnatz
EGGNATZ PASCUCCI, P.A.
7450 Griffin Road, Suite 230
Davie, FL 33314-4104
mpascucci@justicearned.com
jeggnatz@justicearned.com

Jason P. Sultzer
*(Pro Hac Vice)*
Jeremy P. Francis
*(Pro Hac Vice)*
Adam Gonnelli
*(Pro Hac Vice Pending)*
THE SULTZER LAW GROUP, P.C.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com
Gonnellia@thesulzterlawgroup.com

Brett R. Cohen
*(Pro Hac Vice Pending)*
Jeffrey K. Brown
*(Pro Hac Vice Pending)*
Michael K. Tompkins
*(Pro Hac Vice Pending)*
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
bcohen@leedsbrownlaw.com
jbrownl@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

/s/ Richard C. McCrea, Jr.
Attorney