## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**J. LAFLEUR, et al.,**

      **Plaintiffs,**

**v.**                          **Case No.: 8:20-cv-1665-KKM-AAS**

**STATE UNIVERSITY SYSTEM OF**
**FLORIDA, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Defendants move to dismiss the plaintiffs' first amended complaint and to strike the plaintiffs' claim for punitive and treble damages. (Docs. 20, 36). Plaintiffs oppose the defendants' motion. (Docs. 31, 41). The undersigned **RECOMMENDS** that the defendants' motion (Doc. 20) be **GRANTED**.

## I.    BACKGROUND

This putative class action brings claims by students who attend universities in the State of Florida and request a return of a portion of tuition and fees because the universities moved classes to online learning in response to the Novel Coronavirus Disease 2019 (COVID-19). (Doc. 15). Plaintiffs Jarrett LaFleur, Amber Grey, Lindsey Relue, Joshua Harkness, Stacey Lee

Field, Nick Capps, and Alyssa Coates are students enrolled at universities within the State University System of Florida. (*Id.*). The plaintiffs allege they did not receive the in-person benefits and services they contracted and paid for when Florida universities transitioned to remote online learning in Spring 2020 and canceled events, clubs, and organizations. (*Id.*).

In their five-count amended complaint, Plaintiff LaFleur and the other six named plaintiffs sue Defendants State University System of Florida (State University System) and Timothy M. Cerio, Richard Corcoran, Aubrey Edge, Patricia Frost, H. Wayne Huizenga, Jr., Darlene Luccio Jordan, Sydney Kitson, Charles H. Lydecker, Brian Lamb, Alan Levine, Ally Schneider, Steven M. Scott, Eric Silagy, William Self, Kent Sermon, and Norman D. Tripp in their capacity as members of the Board of Governors (the Board of Governors) (collectively, the defendants),[1] alleging state and federal claims. (*Id.*).

Specifically, the plaintiffs' amended complaint asserts claims against the defendants for breach of contract (Count I), violations of the Takings Clause and due process under 42 U.S.C. § 1983 (Counts II and III), conversion (Count IV), and unjust enrichment (Count V). (*Id.*). The defendants move to dismiss

---

[1] The complaint names each individual member of the Board of Governors "in their capacity as members of the Board of Governors." (Doc. 15, p. 1). Thus, this lawsuit is brought against the Board of Governors, not the officials. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1981).

the plaintiffs' amended complaint and move to strike the plaintiffs' claim for punitive and treble damages. (Doc. 20). The plaintiffs responded in opposition to the defendants' motion. (Doc. 31). The defendants replied in opposition to the plaintiffs' response. (Doc. 36). The plaintiffs sur-replied. (Doc. 41). Both parties filed supplemental authority supporting their respective positions. (*See* Docs. 23, 33, 48, 50, 52, 71, 73).

## II.   LEGAL STANDARD

This court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and federal question jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3). Substantive issues for state law claims, including sovereign immunity, are governed by Florida law. *See Fluid Dynamics, LLC v. City of Jacksonville*, 752 F. App'x 924, 925–26 n.1 (11th Cir. 2018).

"The Eleventh Amendment restricts the judicial power under Article III." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996). Asserting Eleventh Amendment immunity tests subject matter jurisdiction. *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998). Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter. *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1238 (M.D. Fla. 2019). These challenges take two forms—facial and factual. *Id.* at 1239. On

facial attacks, like this one, "the Court takes the allegations in the complaint as true." *Id.*

Motions to dismiss for failure to state a claim follow the Federal Rule of Civil Procedure 12(b)(6) standard. A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   ANAYLSIS

The defendants argue the plaintiffs' amended complaint should be dismissed because: (1) the State University System is not a legal entity with the capacity to be sued (Doc. 20, pp. 3–6; Doc. 36, pp. 1–2); (2) sovereign immunity bars the plaintiffs' state law claims (Doc. 20, pp. 6–11; Doc. 36, pp. 2–3); (3) the defendants do not qualify as a "person" under Section 1983 and plaintiffs' constitutional claims are barred (Doc. 20, pp. 11–12); and (4) the plaintiffs' state law claims fail to state a claim for which relief can be granted

(*Id.* at pp. 13–17). The defendants also argue the plaintiffs' claim for punitive and treble damages should be stricken and the plaintiffs' class claims should be dismissed. (Doc. 20, pp. 17–20; Doc. 36, pp. 3–4).

The plaintiffs respond that: (1) the State University System is a legal entity created by the Florida Constitution (Doc. 31, p. 4); (2) the defendants waived sovereign immunity (*Id.* at pp. 5–11); (3) the constitutional claims should not be dismissed (Doc. 31, p. 11; Doc. 41); and (4) the amended complaint adequately states a claim for breach of contract, unjust enrichment, and conversion (Doc. 31, pp. 12–18; Doc. 41). The plaintiffs also argue punitive and treble damages are available, and any dismissal should be without prejudice. (Doc. 31, pp. 18–20).

## A.    State University System's Capacity to be Sued

The capacity of an entity to be sued is governed by the law of the state where the district court is located. Fed. R. Civ. P. 17(b); *United States v. Olavarrieta*, 812 F.2d 640 (11th Cir. 1987). Under Florida law, only legal entities, personal or corporate, can be sued. *Florida Med. Assoc., Inc. v. Spires*, 153 So.2d 756 (Fla 1st DCA 1963). The Florida Constitution empowers the Florida Legislature to authorize suits against the state or any of its agencies. *See Daniels v. State Rd. Dep't.*, 170 So.2d 846, 849 (Fla. 1964) ("[m]any state

agencies, although purely public bodies, are or have been in the past designated as a 'body corporate' by statute and given many of the attributes of a private corporation, such as the right to sue and be sued").

The State University System, including the board of governors and boards of trustees, was created by Article IX, Section 7 of the Florida Constitution. Section 7 of Article IX provides, in part:

> (b) State University System. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
>
> (c) Local Boards of Trustees. Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system. The board of governors shall establish the powers and duties of the board of trustees. Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors. The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law. The chair of the faculty senate, or the equivalent, and the present of the student body of the university shall also be members.
>
> (d) Statewide Board of Governors. The board of governors shall be a body corporate consisting of seventeen members. The board shall operate, regulate, control, and be fully responsible for the management of the whole university system. These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the wellplanned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs.

The board's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, shall also be members of the board.

Art. IX, § 7(b)-(d), Fla. Const. The board of governors is the responsible constitutional body for establishing system-wide policies and the boards of trustees are responsible for implementing these policies in their respective institutions. *See id.*; § 1001.70, Fla. Stat.

Under Section 1001.72(1), Florida Statutes, each state university's board of trustees "shall be a public body corporate . . . with all of the powers of a body corporate, including the powers to . . . sue and be sued, to plead and be impleaded in all courts of law of equity . . ." Similarly, the board of governors is a body corporate under Florida law. *See* Article IX, § 7(d), Fla. Const.; § 1001.70, Fla. Stat.

The plaintiffs provide no statutory provision or otherwise direct where the Florida Legislature provided the State University System with the capacity to be sued.[2] The Board of Governors—not the State University System—is the

---

[2] In *United States v. Olavarrieta*, the Eleventh Circuit affirmed the district court's dismissal of a complaint against the University of Florida and stated: "Under Florida

7

correct entity to sue. *See* § 1001.72(1), Fla. Stat. Thus, the claims alleged against the State University System should be dismissed. *See U.S. E.E.O.C. v. Fla. Gulf Coast Univ.*, No. 2:06-CV-326-FtM-29SPC, 2007 WL 2077577, at *2 (M.D. Fla. July 16, 2007) ("The Court concludes that The Gulf Coast University Board of Trustees is the proper party, and that The Gulf Coast University should be dismissed."); *Souto v. Fla. Int'l Univ. Found., Inc.*, No. 19-21935-CIV-LENARD/O'SULLIVAN, 2020 WL 1036537, at *11–12 (S.D. Fla. Mar. 3, 2020) (same).

## B.   Sovereign Immunity

The Eleventh Amendment protects a nonconsenting state from suit in federal court by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10, 20–21 (1890). Likewise, "Eleventh Amendment immunity bars suits brought in federal court when...an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

"In Florida, sovereign immunity is the rule, rather than the exception."

---

law, the University of Florida is not endowed with an independent corporate existence or the capacity to be sued in its own name. Rather, those characteristics are bestowed on the Board of Regents as the head of Florida's university system . . . Therefore, the University of Florida is not a proper party in this action, and the district court was correct in dismissing the third-party complaint asserted against it." 812 F.2d 640, 643 (11th Cir. 1987).

*Pan-Am Tobacco Corp. v. Dep't of Corr.*, 41 So. 2d 4, 5 (Fla. 1984). Sovereign immunity extends to the state itself and arms of the state. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The Board of Governors is defined as "part of the executive branch of state government," § 1001.71(3), Fla. Stat.; § 1000.21(6), Fla. Stat., and so it is an arm of the state. *See Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc.*, 861 F.3d 1234, 1235 (11th Cir. 2017) ("The USF Board is an arm of Florida because the State of Florida defines the USF Board to be a part of its government, exercises great control over it, funds it, and pays judgments entered against it.").[3]

State sovereign immunity does not apply when a state waives its immunity for certain types of claims. *See Camm v. Scott*, 834 F. Supp. 2d 1342, 1347 (M.D. Fla. 2011) (describing the exceptions to sovereign immunity). The plaintiffs argue the Board of Governors waived sovereign immunity for the plaintiffs' state law claims of breach of contract, unjust enrichment, and conversion. (Doc. 31, pp. 5–11).

### 1.    Breach of Contract

"The test to determine if a state has waived its sovereign immunity 'is a

---

[3] It is a well-settled proposition that Florida's universities and their boards are arms of the state and are therefore just as entitled to Eleventh Amendment and other sovereign-immunity protection as the state itself. *See, e.*g., *Souto*, 446 F. Supp. 3d at 990 (collecting cases).

stringent one.'" *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)). "A waiver of Eleventh Amendment immunity must specifically permit suits in federal court." *Id.* "A State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Fla. Prepaid*, 527 U.S. at 676. "[A]bsent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003). "For these reasons, a waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

The Board of Governors "enjoys Florida sovereign immunity from contractual liability unless the action is based on an 'express, written contract [ ] into which the state agency has statutory authority to enter.'" *Williams v. Becker*, 608 F. App'x 905, 906 (11th Cir. 2015) (quoting *Pan–Am Tobacco Corp.*, 471 So. 2d at 6); *see also Charity v. Bd. of Regents of the Div. of Univ. of Fla. Dept. of Ed.*, 698 So. 2d 907, 908 (Fla. 1st DCA 1997) (holding that the board has sovereign immunity and affirming dismissal due to lack of express written contract). "Unless the language of the contract expressly provides for a waiver

of the state's immunity from being haled into federal court, the Eleventh Amendment bars suit." *Wells v. Bd. of Trustees of Fla. Gulf Coast Univ.*, No. 2:19-CV-859-JLB-NPM, 2021 WL 883333, at *3 (M.D. Fla. Feb. 8, 2021) (citation omitted).

> The plaintiffs' breach of contract claim alleges:

> By accepting payment, Defendants entered into contractual arrangements with Plaintiffs and Class Members to provide educational services, experiences, opportunities, and related services for the Spring Semester 2020 and Summer Semester 2020.

(Doc. 15, ¶ 54). These allegations do not establish the "express, written, contract" required to overcome the Board of Governors' sovereign immunity. The plaintiffs neither provide contract language nor append a contract to the complaint to serve as a "clear declaration" of the state's intent to submit to federal jurisdiction. *See Parfitt v. Fla. Gulf Coast Univ.*, No. 2:19-CV-727-FTM-38NPM, 2020 WL 1873585, *4 (M.D. Fla. Apr. 15, 2020).

The plaintiffs' breach of contract claim against the defendants should be dismissed based on sovereign immunity.[4]

---

[4] The court notes that several federal courts in Florida – applying Florida law – have denied similar motions to dismiss breach of contract claims brought against *private* colleges and universities following COVID-19 transitions to remote learning. *See, e.g.*, *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152 (S.D. Fla. 2020); *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335 (S.D. Fla. 2020); *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, No.

### 2.    Unjust Enrichment

The plaintiffs argue their unjust enrichment claim falls within the court's jurisdiction to the same extent as their breach of contract claim does. (*See* Doc. 15, pp. 22–24). As stated above, however, sovereign immunity bars the plaintiffs breach of contract claim.

A claim for unjust enrichment sounds in equity and is based on an implied contract. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). With no waiver of immunity for claims in equity, the state continues "to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment" even in its own courts. *Veolia Water N. Am. - S., LLC v. City of Everglades City*, No. 2:18-CV-785-FTM-99UAM, 2019 WL 1921900, *4 (M.D. Fla. Apr. 30, 2019); *see also Calderone v. Scott*, No. 2:14-CV-519-FTM-29CM, 2015 WL 1800315, at *2 (M.D. Fla. Apr. 16, 2015) (dismissing unjust enrichment claim with prejudice); *Llorca v. Rambosk*, No. 2:15-CV-17, 2015 WL 2095805, at *2 (M.D. Fla. May 5, 2015) (rejecting the plaintiff's claims of oral contract provisions and dismissing unjust enrichment claim with prejudice); *Fin. Healthcare Assocs., Inc. v. Public Health Trust of Miami-Dade*

---

6:20-CV-927-ORL-40EJK, 2021 WL 140708 (M.D. Fla. Jan. 14, 2021). However, because those cases involved private universities, they do not have the same protections as Florida's public universities and their governing boards.

*County*, 488 F. Supp. 2d 1231, 1236 (S.D. Fla. 2007) (holding claim based on implied contract barred by sovereign immunity).

Thus, like the beach if contract claim, the plaintiffs' unjust enrichment claim should be dismissed based on sovereign immunity.

### 3.    Conversion

Conversion is not just "the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled possession of the property." *Brand v. Old Republic Nat'l Title Ins. Co.*, 797 So.2d 643, 646 (Fla. 3d DCA 2991).

While Section 768.28, Florida Statutes, waives, with certain limitations, Florida's sovereign immunity from tort actions brought in its own courts, this does waive its Eleventh Amendment immunity. *See Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990). Section 768.28(18), Florida Statutes, states:

> No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court.

There is no such waiver here.

*    *    *    *

13

The court's subject matter jurisdiction does not extend to the plaintiffs' state law claims. Thus, the plaintiffs' state law claims (counts I, IV, and V) should be dismissed.

### C.    Federal and State Constitutional Claims

Counts II and III of the amended complaint assert a Takings claim under 42 U.S.C. § 1983 and a procedural due process claim under 42 U.S.C. § 1983 and the Florida Constitution. (Doc. 15, pp. 18–21).

### 1.    Sovereign Immunity and § 1983 Claims

Under the Florida Constitution, "provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." § 13, Art. X, Fla. Const. Section 768.28, Florida Statutes, provides a limited waiver of sovereign immunity for certain common law tort claims against the state.

Under Section 768.28, Florida Statutes, "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act." In *Hill v. Dept. of Corr.*, 513 So. 2d 129, 133 (Fla. 1987), the court held that Section 768.28, Florida Statutes, was intended to render the state and its agencies liable for damages for traditional torts under state law, but to exclude liability for "constitutional

14

torts." *Id.* The United States Supreme Court overruled *Hill*'s prohibition against bringing § 1983 claims in Florida courts, but did not disturb *Hill*'s statement that the waiver of sovereign immunity under § 768.28, Fla. Stat., did not extend to "constitutional torts." *See Garcia v. Reyes*, 697 So. 2d 549, 550 (Fla. 4th DCA).

In *Bd. of Regents of State of Fla. v. Snyder*, 826 So. 2d 382 (Fla. 2nd DCA 2002), the court held the Board of Regents was entitled to sovereign immunity for civil rights action brought under § 1983 and stated:

> It is well established in both federal and state courts that a state and its agencies are immune from suit arising under 42 U.S.C. § 1983 (citations omitted). Although this state has waived its sovereign immunity for state tort actions, that waiver does not extend to civil rights actions. *See* 768.28, Fla. Stat. (200); *Spooner*, 514 So.2d at 1078; *Hill*, 513 So.2d at 132. Federal law is enforceable in state courts, but only municipal corporations, local government entities, individual officers and other actors who are not arms of the state may be liable under 42 U.S.C. § 1983. *See Howlett v. Rose*, 496 U.S. 356, 376–77 (1990). Id. at 387.

Because sovereign immunity was not abrogated by § 768.28, Fla. Stat., for constitutional torts, the plaintiffs' § 1983 claims should be dismissed.

## 2.   Eleventh Amendment and § 1983 Claims

Section 1983 authorizes assertion of a claim for relief against a "person" who has acted under color of state law. The Board of Governors is a state entity and not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491

15

U.S. 58, 70 (1989) ("[S]tate and governmental entities that are considered 'arms of the state' are not 'persons' subject to liability for purposes of 42 U.S.C § 1983 action."). Nor has Congress abrogated Eleventh Amendment immunity for § 1983 actions. *Williams v. Bd. of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1301 (11th Cir. 2007); *see also Bell v. Florida*, No. 6:17-CV-326, 2017 WL 1399975, at *4 (M.D. Fla. Mar. 13, 2017) (hold the plaintiff's § 1983 claims against the State of Florida are barred by Eleventh Amendment immunity).

Based on Eleventh Amendment immunity, the plaintiffs' § 1983 claims should be dismissed.

### 3. Constitutional Takings Claim Under § 1983

Besides the immunity doctrines above, the plaintiffs' takings claim under § 1983 is not viable because the plaintiffs' voluntary tuition and fee payments do not qualify as a "taking."

"The first inquiry for section 1983 is whether the defendant deprived the plaintiff of a constitutionally protected property right." *Key W. Harbor Dev. v. City of Key W.*, 987 F.2d 723, 727 (11th Cir. 1993). In *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564 (1972), the Supreme Court held:

> In order for an individual to have a protected property interest, a person clearly must have more than an abstract need or desire for

it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . that support claims of entitlement to those benefits. Id. at 577.

"Whether Florida law has created a property interest is a legal question for the Court to decide." *City of Key West*, 987 F.2d at 727. If a property interest asserted in a takings claim is created by state statutory law, the right must be gleaned from the statute itself. *Checker Cab v. Miami-Dade*, 899 F.3d 908, 917 (11th Cir. 2018).

The plaintiffs pleaded no Florida statutory basis for their claimed property interest in tuition and fees voluntarily paid. The payment of fees is required by statute. *See* § 1009.24(2), Fla. Stat. ("All students shall be charged fees except students who are exempt from fees or students whose fees are waived."). Nothing in the Florida statutes create a present possessory interest in any funds paid as tuition or fees, nor do students have an individually identified interests in such fees.

To "take" property under the Fifth Amendment means to deprive an owner of his own property against his will. The plaintiffs do not cite, nor can the court find, any case that holds a voluntary tuition and fee payment to a

public university constitutes a "taking." For these reasons, the plaintiffs' constitutional takings claim (count II) should be dismissed.

### D.    Failure to State a Claim for Relief[5]

The defendants argue the plaintiffs' state law claims (counts I, IV, and V) fail to state a claim upon which relief can be granted. (Doc. 20, pp. 13–17).

### 1.    Breach of Contract

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

The plaintiffs' amended complaint does not identify a specific contractual provision that establishes an obligation to provide in-person educational service. However, throughout the amended complaint, the plaintiffs point to publications in which some type of online learning is provided by the same universities for reduced pricing. These allegations are sufficient at this early stage, especially considering that Florida law recognizes that a college/student contract can be implied by university publications. That said, this implication

---

[5] As stated above, the court finds that the plaintiffs' state law claims should be dismissed based on sovereign immunity. However, because this is a Report and Recommendation, the court also will address the defendants' additional arguments.

involves cases against *private* universities. *See Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1217 (M.D. Fla. 2020) ("[U]nder Florida law, a student and a *private* university have a contractual relationship.") (emphasis added); *Sharick v. Southeastern Univ. of Health Sciences, Inc.*, 780 So. 2d 136, 138–39 (Fla. 3d DCA 2000) (holding that the terms of that contractual relationship may include the publications of the private university).

Although the plaintiffs' breach of contract claim should be dismissed based on sovereign immunity, the claim otherwise is adequately pleaded to survive the alternative argument that the plaintiffs failed a state a claim for breach of contract.

### 2.    Unjust Enrichment

Under Florida law, unjust enrichment claims require that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knows of the benefit and voluntarily accepts and retains it; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit. *See Duty Free World v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

"It is well settled in Florida that . . . a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning

19

the same subject matter." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015). Here, the defendants deny a contract existed for on-campus education and related services. When parties dispute an underlying contract, dismissal of an unjust enrichment claim is premature. *See Salerno*, 488 F. Supp. 3d at 1218. The plaintiffs may also allege alternative claims. *Id.* (collecting cases).

Although the plaintiffs' unjust enrichment claim should be dismissed based on sovereign immunity, the claim otherwise is adequately pleaded to survive the alternative argument that the plaintiffs failed a state a claim for unjust enrichment.

### 3.   Conversion

"Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007). "[T]he elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Creative Entertainment*, LLC, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013).

The property, in-person learning, is insufficiently tangible to be the

subject of a conversion claim. An obligation to pay money, is also insufficiently tangible to qualify as "property." *Salerno*, 488 F. Supp. 3d at 1218 ("[I]n-person learning[] is intangible and not the proper subject of a conversion claim" and "an obligation to pay money, like [plaintiff's] claim for tuition reimbursement, is also insufficiently tangible to qualify as 'property.'"). Accordingly, the conversion claim should be dismissed. *See id.* at 1219 (dismissing a similar conversation claim with prejudice).

### E.    Damages

The plaintiffs request an award of punitive and treble damages. (Doc. 15, p. 24). These damages are not legally cognizable on the plaintiffs' state law claims. *See, e.g.*, *CCCS Int'l v. Fontainebleau Resorts, LLC*, No. 09-CIV-21881-UNGARO, 2009 WL 10667775, at *4 (S.D. Fla. Sept. 18, 2009) ("As with actions for breach of express contracts, punitive damages are unavailable in an action for unjust enrichment or quantum meruit."); § 768.28(5), Fla. Stat. ("The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages . . ."). Similarly, plaintiffs cannot recover punitive damages on their constitutional claims. *See Bradsheer v. Florida Dep't of Highway Safety and Motor Vehicles*, 20 So.3d 915,

920 (Fla. 1st DCA 2009).

### F.    Dismissal with Prejudice

A second amended complaint would not cure the deficiencies here, which present legal barriers that cannot cured by amendment. *See Rance v. Winn*, 287 F. App'x. 840, 841 (11th Cir. 2008) (affirming dismissal of original complaint with prejudice because "district courts need not permit amendment where it would be futile to do so). Dismissal of the plaintiffs' claims requires dismissal of the entire complaint. *Murray v. U.S. Bank Trust*, 365 F.3d 1284, 1293 (11th Cir. 2004) ("Thus, just as plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent.").

Because the plaintiffs stated no viable claims against the defendants,[6] the court should dismiss the action before proceeding to class certification and no notice of this involuntary dismissal need be given to putative class members.

## IV.    CONCLUSION

The State University System is not a legal entity with the capacity to be sued. The plaintiffs' state law claims are barred by sovereign immunity and

---

[6] Although the plaintiffs adequately pleaded its claims for breach of contract and unjust enrichment, the claims are barred by sovereign immunity.

the plaintiffs' constitutional claims fail as a matter of law.

For these reasons, it is **RECOMMENDED** that the defendants' motion to dismiss the plaintiffs' first amended complaint and to strike the plaintiffs' claim for punitive and treble damages (Doc. 20) be **GRANTED**.

**ENTERED** in Tampa, Florida on August 2, 2021.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## **NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.

23